UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBORAH ANN SCHERMAN,                          :

                Plaintiff,               :

              -against-              :                     09 Civ. 2476 (DAB) (AJP)

                             :           **REPORT AND RECOMMENDATION**

NEW YORK STATE BANKING DEPARTMENT,            :

               Defendant.              :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Deborah A. Batts, United States District Judge:**

                Pro se plaintiff Deborah Scherman brings this employment discrimination action pursuant to the Americans with Disabilities Act ("ADA") against the her employer, the New York State Banking Department.  (Dkt. No. 2: Compl. at 1-3.)

                The Banking Department has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) on the grounds that:  (1) Scherman's claim for money damages pursuant to ADA Title I is barred by the Eleventh Amendment because the Banking Department is "an agency of the State of New York"; and (2) Scherman fails to state a valid claim pursuant to ADA Title II because "Title I is the exclusive federal remedy for claims of disability discrimination in employment under the ADA."  (Dkt. No. 6: Banking Dep't Notice of Motion; Dkt. No. 8: Banking Dep't Br. at 4-5; Dkt. No. 11: Banking Dep't Reply Br. at 1-3.)

H:\OPIN\SCHERMAN

For the reasons set forth below, the Banking Department's motion to dismiss should be <u>GRANTED</u>.

<b>FACTS</b>

The facts alleged in Scherman's complaint are assumed to be true for purposes of this motion, and will be set forth herein without use of the preamble "Scherman alleges."

Scherman has been employed by the State of New York since 1979 and began working for the State Banking Department in 1989.  (Dkt. No. 2: Compl. at 7; <u>see also</u> Dkt. No. 10: Scherman Br. at 1.)  During the period in issue, 2003-2006, Scherman worked at the Banking Department's helpdesk.  (Compl. at 7.)

**Scherman's Carpal Tunnel Syndrome, Surgeries and Grievances**

Scherman has experienced carpal tunnel syndrome for "at least the past 9 years." (Dkt. No. 10: Scherman Br. at 1-2; <u>see</u> Dkt. No. 2: Compl. at 7-8.)  Scherman underwent carpal tunnel release surgery in both hands in 2003 and again in 2004.  (Compl. at 8.)  Additionally, Scherman underwent shoulder adhesive repair surgery in March 2006.  (Compl. at 3, 7.)  After each surgery, Scherman was assigned tasks which required "heavy" manual labor despite her condition. (Compl. at 7.)

Following carpal tunnel surgery in 2003, Scherman returned to work at the Banking Department's helpdesk and received a laptop exchange assignment which "cause[d] an exhausting strain" on Scherman's hands and wrists.  (Compl. at 8.)  "[T]he extreme usage from the laptop assignment while still in the healing ph[]ase necessitat[ed] another [carpal tunnel] release surgery,"

in October and December 2004.  (Id.)  Upon returning to work, Scherman provided a doctor's note stating that she should not lift "more than 5lbs."   (Id.)

In July 2005, Scherman met with Diane Rulon of the Banking Department.  (Compl. at 8.) Scherman discussed the "possibility of doing onsite training" of Banking Department staff as well as the "possibility of [Scherman] being promoted" as a result of her recently passing the civil service exam.  (Id.)  Rulon informed Scherman that her score was "too low on the list" and because of problems in the IT department,  the chances of her getting a promotion were "like none."  (Id.) However, during this time frame, temporary employees were hired and promoted over Scherman. (Id.)

In March 2006, Scherman underwent shoulder repair surgery.  (Compl. at 7.)  Upon returning to work, Scherman again supplied a doctor's note that she should not lift more than five pounds.  (Compl. at 7-8.)  On April 12, 2006, the Banking Department notified Scherman that she now also would be responsible for "all printer related issues," including "maintaining, tracking, and ordering" printer parts and toner cartridges.  (Compl. at 7.)  Despite the doctor's note, Scherman was expected to handle toner cartridges weighing "close to 20lbs."  (Id.)[1]

---

[1]     Scherman's complaint refers to several other instances of unfair treatment:  in April 2006, the Banking Department reassigned Scherman to another location with "no reason given"; soon after, Scherman began receiving e-mails from her supervisor, Irving Leaf, intended to "embarrass" her; and in June 2006, Scherman's requests for personal leave were denied even though her father was seriously ill.  (Compl. at 7-8.)

**Scherman's Claims and the Banking Department's Motion to Dismiss**

Scherman initially brought this action pursuant to ADA Title I. (Dkt. No. 2: Compl. at 1.)  In response to the Banking Department's motion to dismiss, Scherman restyled her action as pursuant to ADA Title II.  (Dkt. No. 10: Scherman Br. at 2.)[2/]  Scherman's complaint requests unspecified compensatory damages and attorney's fees for the physical, mental, and emotional pain and suffering caused by the Banking Department's actions.  (Compl. at 4.)

The Banking Department has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. No. 6: Banking Dep't Notice of Motion to Dismiss at 1; Dkt. No. 11: Banking Dep't Reply Br. at 1), on the grounds that:  (1) the Court lacks subject matter jurisdiction over Scherman's claims under Title I of the ADA because the Banking Department, "as an agency of the State of New York, is shielded by state sovereignty under the Eleventh Amendment of the United States Constitution"  (Dkt. No. 8: Banking Dep't Br. at 4); and (2) Scherman fails to state a valid claim under Title II of the ADA because "Title I is the exclusive federal remedy for claims of disability discrimination in employment under the ADA" (Banking Dep't Reply Br. at 2-3).

---

[2/]     On July 15, 2009, after the Banking Department filed its motion to dismiss, Scherman requested an extension of her time to respond and indicated a desire to amend the complaint; on July 24, 2009, Judge Batts granted a two month extension for Scherman to oppose the motion and/or amend the complaint. (Dkt. No. 9: 7/24/09 Order.) Scherman failed to submit an amended complaint.  Her opposition brief notes that it was filed with the assistance of counsel, although counsel has not formally appeared.  (See Scherman Br. at 4.)  Because Scherman technically is pro se, this Court will liberally construe her complaint as raising claims pursuant to ADA Titles I and II.  (See cases cited at pages 8-9 below.)

## ANALYSIS

### I. THE STANDARDS GOVERNING A MOTION TO DISMISS

#### A. The Twombly-Iqbal "Plausibility" Standard

In two decisions in the last few years, the Supreme Court significantly clarified the standard for a motion to dismiss, as follows:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in <u>Twombly</u>, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it <u>demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation</u>. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, <u>a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face</u>."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"
>
> Two working principles underlie our decision in <u>Twombly</u>.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  <u>Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice</u>.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  <u>Second, only a complaint that states a plausible claim for relief survives a motion to dismiss</u>.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."  Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009) (citations omitted & emphasis added) (quoting

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-57, 570, 127 S. Ct. 1955, 1965-66, 1974 (2007)

(retiring the Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957), pleading standard that

required denying a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.")).[3/]

## B.    Consideration Of Documents Attached To Or Referred To In The Complaint

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading.  Thus,

in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the

complaint." Vassilatos v. Ceram Tech Int'l, Ltd., 92 Civ. 4574, 1993 WL 177780 at *5 (S.D.N.Y.

---

[3/]    Accord, e.g., Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009); Lindner v. Int'l Bus. Machs. Corp., 06 Civ. 4751, 2008 WL 2461934 at *3 (S.D.N.Y. June 18, 2008); Joseph v. Terrence Cardinal Cooke Health Care Ctr., 07 Civ. 9325, 2008 WL 892508 at *1 (S.D.N.Y. Apr. 2, 2008); Elektra Entm't Group, Inc. v. Barker, 551 F. Supp. 2d 234, 237 (S.D.N.Y. 2008); Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2008); Diana Allen Life Ins. Trust v. BP P.L.C., 06 Civ. 14209, 2008 WL 878190 at *3 (S.D.N.Y. Mar. 31, 2008).

May 19, 1993) (citing <u>Kopec</u> v. <u>Coughlin</u>, 922 F.2d 152, 154-55 (2d Cir. 1991)).[4/]  The Court, however, may consider documents attached to the complaint as an exhibit or incorporated in the complaint by reference.  <u>E.g.</u>, <u>ATSI Commc'ns, Inc.</u> v. <u>Shaar Fund, Ltd.</u>, 493 F.3d 87, 98 (2d Cir. 2007); <u>Chambers</u> v. <u>Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) ("Because this standard has been misinterpreted on occasion, we reiterate here that a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."); <u>Rothman</u> v. <u>Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000) ("For purposes of a motion to dismiss, we have deemed a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. . . .").[5/]

---

[4/]    <u>Accord</u>, <u>e.g.</u>, <u>Faulkner</u> v. <u>Beer</u>, 463 F.3d 130, 134 (2d Cir. 2006); <u>Aniero Concrete Co.</u> v. <u>N.Y.C. Constr. Auth.</u>, 94 Civ. 3506, 2000 WL 863208 at *31 (S.D.N.Y. June 27, 2000); <u>Six W. Retail Acquisition, Inc.</u> v. <u>Sony Theatre Mgmt. Corp.</u>, 97 Civ. 5499, 2000 WL 264295 at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").

When additional materials are submitted to the Court for consideration with a 12(b)(6) motion, the Court must either exclude the additional materials and decide the motion based solely upon the complaint, or convert the motion to one for summary judgment under Fed. R. Civ. P. 56.  <u>See</u> Fed. R. Civ. P. 12(b); <u>Friedl</u> v. <u>City of N.Y.</u>, 210 F.3d 79, 83 (2d Cir. 2000); <u>Fonte</u> v. <u>Bd. of Managers of Cont'l Towers Condo.</u>, 848 F.2d 24, 25 (2d Cir. 1988).

[5/]    <u>See also</u>, <u>e.g.</u>, <u>Yak</u> v. <u>Bank Brussels Lambert</u>, 252 F.3d 127, 130 (2d Cir. 2001) (citing <u>Cortec Indus., Inc.</u> v. <u>Sum Holding L.P.</u>, 949 F.2d 42, 47 (2d Cir. 1991), <u>cert. denied</u>, 503 U.S. 960, 112 S. Ct. 1561 (1992)); <u>Paulemon</u> v. <u>Tobin</u>, 30 F.3d 307, 308-09 (2d Cir. 1994); <u>Brass</u> v. <u>Am. Film Techs., Inc.</u>, 987 F.2d 142, 150 (2d Cir. 1993).

8

"However, before materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exists no material disputed issue of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d at 134 (citations omitted).

In this case, the Court need not refer to any of the documents attached to Scherman's complaint because the issue is one of law.  In any event, the documents do not help Scherman in connection with this motion.

* * * *

The Court's role in deciding a motion to dismiss "'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  Saunders v. Coughlin, 92 Civ. 4289, 1994 WL 88108 at *2 (S.D.N.Y. Mar. 15, 1994) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)); accord, e.g., Watson v. McGinnis, 964 F. Supp. 127, 130-31 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.).

Even after Twombly and Iqbal, when reviewing a pro se complaint, the Court must use less stringent standards than if the complaint had been drafted by counsel and must construe a pro se complaint liberally.  See, e.g., Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009); LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991); Watson v. McGinnis, 964 F. Supp. at 131; Saunders v. Coughlin, 1994 WL 88108 at *2 (citing Hughes v. Rowe, 449 U.S. 5, 101 S. Ct. 173 (1980)).  However, "[d]ismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief. . . ."  2 Moore's Federal Practice § 12.34[4][a], at 12-72.7

(2005).  Thus, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'"  Id., § 12.34[1][b], at 12-61; see also, e.g., Joyner v. Greiner, 195 F. Supp. 2d 500, 503 (S.D.N.Y. 2002) (action dismissed because pro se plaintiff "failed to allege facts tending to establish" that defendants violated his constitutional rights).

## II.   SCHERMAN'S ADA TITLE I CLAIM SHOULD BE DISMISSED AS BARRED BY THE ELEVENTH AMENDMENT

The Banking Department asserts that Scherman's employment discrimination claims pursuant to Title I of the ADA are "barred by New York State's Eleventh Amendment sovereign immunity."  (Dkt. No. 8: Banking Dep't Br. at 4-5.)

### A.   Eleventh Amendment Immunity Generally

The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  As the Second Circuit has explained:

> The Supreme Court has consistently held that the federal courts lack jurisdiction not only over suits against a state brought by citizens of other states, as the literal language of the Amendment provides, but also over suits against such states brought by their own citizens.  Thus, it is clear that, with few exceptions, federal courts are barred from entertaining suits by a private party against a state in its own name.

Dwyer v. Regan, 777 F.2d 825, 835 (2d Cir. 1985) (emphasis added); accord, e.g., Tenn. Student Assistance Corp. v. Hood, 541 U.S. 440, 446, 124 S. Ct. 1905, 1909 (2004); Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 962 (2001); Gollomp v. Spitzer, 568 F.3d 355, 365-66 (2d Cir. 2009); Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236

(2d Cir. 2006); Iwachiw v. Port Auth. of N.Y. & N.J., 151 Fed. Appx. 93, 94 (2d Cir. 2005);

Clissuras v. City Univ. of N.Y., 359 F.3d 79, 81 (2d Cir.), cert. denied, 543 U.S. 987, 125 S. Ct. 498

(2004); Dube v. State Univ. of N.Y., 900 F.2d 587, 594 (2d Cir. 1990) (quoting Dwyer), cert. denied,

501 U.S. 1211, 111 S. Ct. 2814 (1991).[6]

        The result is no different when suits are brought against state agencies as opposed to

the State in its own name.  "For Eleventh Amendment purposes, governmental entities of the state

that are considered 'arms of the state' receive Eleventh Amendment immunity."  Fields v. Walthers,

No. 94-CV-1659, 1997 WL 204308 at *2 (N.D.N.Y. Apr.  5, 1997) (Pooler, D.J.); accord, e.g.,

Gollomp v. Spitzer, 568 F.3d at 366; Gorton v. Gettel, 554 F.3d 60, 62 (2d Cir. 2009); Deposit Ins.

Agency v. Superintendent of Banks of N.Y., 482 F.3d 612, 617 (2d Cir. 2007); Woods v. Rondout

Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d at 236; In re Charter Oak Assocs., 361 F.3d 760, 765

(2d Cir.), cert. denied, 543 U.S. 955, 125 S. Ct. 408 (2004); Clissuras v. City Univ. of N.Y., 359 F.3d

---

[6]    See also, e.g., Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304, 110 S. Ct. 1868, 1872 (1990) ("This Court has drawn upon principles of sovereign immunity to construe the [Eleventh] Amendment to 'establish that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state."'"); Papasan v. Allain, 478 U.S. 265, 276, 106 S. Ct. 2932, 2939 (1986); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 908 (1984); Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S. Ct. 1347, 1355 (1974) ("While the [Eleventh] Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought by her own citizens as well as by citizens of another State.") (citing cases).

at 81; Posr v. Court Officer Shield No. 207, 180 F.3d 409, 414 (2d Cir. 1999); Harris v. N.Y.S. Educ. Dep't, 419 F. Supp. 2d 530, 533 (S.D.N.Y. Mar. 6, 2006).[7/]

The State and its agencies are protected by Eleventh Amendment immunity "whether the relief sought is legal or equitable." Papasan v. Allain, 478 U.S. at 276, 106 S. Ct. at 2939; accord, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. at 100, 104 S. Ct. at 908; Missouri v. Fiske, 290 U.S. 18, 27, 54 S. Ct. 18, 21 (1933) ("Expressly applying to suits in equity as well as at law, the [Eleventh A]mendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a state.").[8/]

The Second Circuit has developed a two factor test to determine whether an agency is an arm of the state: "(1) 'the extent to which the state would be responsible for satisfying any judgment that might be entered against the defendant entity'; and (2) 'the degree of supervision

---

[7/]   See also, e.g., United States v. City of Yonkers, 96 F.3d 600, 619 (2d Cir. 1996) (New York State Education Department and State Board of Regents entitled to Eleventh Amendment immunity), cert. denied, 521 U.S. 1104, 117 S. Ct. 2479 (1997); Jackson v. Johnson, 985 F. Supp. 422, 426 (S.D.N.Y. 1997) (Kaplan, D.J. & Peck, M.J.) (New York State Department of Correctional Services entitled to Eleventh Amendment immunity, citing cases).

[8/]   See also, e.g., Jacobs v. Mostow, 271 Fed. Appx. 85, 88 (2d Cir. 2008); Walker v. New York, 150 Fed. Appx. 28, 30 (2d Cir. 2005), cert. denied, 549 U.S. 1265, 127 S. Ct. 1493 (2007); Rosenberger v. N.Y.S. Office of Temp. & Disability Assistance, 153 Fed. Appx. 753, 754 (2d Cir. 2005); Russell v. Dunston, 896 F.2d 664, 667 (2d Cir.) ("An unconsenting state is immune not only from suits for damages but also from declaratory and equitable actions."), cert. denied, 498 U.S. 813, 111 S. Ct. 50 (1990); Dube v. State Univ. of N.Y., 900 F.2d at 594; Harris v. N.Y.S. Educ. Dep't, 419 F. Supp. 2d at 533 ("This bar to suit applies regardless of the relief sought."); DiNapoli v. DiNapoli, 95 Civ. 7872, 1995 WL 604607 at *1 (S.D.N.Y. Sept. 22, 1995) (Sotomayor, D.J.).

exercised by the state over the defendant entity.'" Clissuras v. City Univ. of N.Y., 359 F.3d at 82 (quoting Pikulin v. City Univ. of N.Y., 176 F.3d 598, 600 (2d Cir. 1999)).[9]   The Banking Department satisfies both factors.  First, the Banking Department is included in the State's Executive Budget, and the State Comptroller pays the Banking Department's expenses out of State funds.  (See State of New York Banking Department - History, at http://www.banking.state.ny.us/history.htm.) Second, the Superintendent and the Banking Department board members are appointed by the Governor with the advice and consent of the State Senate.  N.Y. Banking Law §§ 12-13.  Scherman does not contest that the Banking Department qualifies as an "arm of the state" (see Dkt. No. 10: Scherman Br.), and prior cases have held the Banking Department to be an arm of the state for Eleventh Amendment purposes.  E.g., Deposit Ins. Agency v. Superintendent of Banks of N.Y., 482 F.3d at 617 ("[W]e assume, and no party disputes, . . . that the Superintendent is an arm of the State of New York and thus entitled to whatever immunity the Eleventh Amendment may bestow."); Bechtel v. N.Y.S. Banking Dep't, No. 92CV182, 1997 WL 667784 at *2 (W.D.N.Y. Oct. 14, 1997).

Accordingly, absent an exception to Eleventh Amendment immunity, the Banking Department is immune from Scherman's suit for damages.

---

[9]   See also, e.g., Gollomp v. Spitzer, 568 F.3d at 366; Gorton v. Gettel, 554 F.3d at 62; Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d at 236-37.

### B.      No Exception to Eleventh Amendment Immunity Exists Here

"The Eleventh Amendment bar to suit is not absolute."  Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304, 110 S. Ct. 1868, 1872 (1990).  As the Supreme Court has explained:

> While [Eleventh Amendment] immunity from suit is not absolute, we have recognized only two circumstances in which an individual may sue a State.  First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment – an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance.  Second, a State may waive its sovereign immunity by consenting to suit.

College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 119 S. Ct. 2219, 2223 (1999) (citations omitted); see, e.g., Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 363, 121 S. Ct. 955, 962 (2001) ("Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority,'" including § 5 of the 14th Amendment.); Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. at 304, 110 S. Ct. at 1872; In re Charter Oaks Assocs., 361 F.3d 760, 765 (2d Cir. 2004).[10]

Neither exception to Eleventh Amendment immunity applies in this case.  First, the Supreme Court has held that Congress's enactment of Title I of the ADA did not validly abrogate state sovereign immunity.  Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. at 368, 121 S. Ct. at 964-65 (2001); accord, e.g., Darcy v. Lippman, No. 08-2293, 2009 WL 3416168 at *1 (2d Cir. Oct. 22, 2009) ("Abrogation of state sovereign immunity is [not] accomplished . . . by ADA Title I . . . .");

---

[10]      See also, e.g., Close v. State of N.Y., 125 F.3d 31, 36 (2d Cir. 1997); Gaynor v. Martin, 77 F. Supp. 2d 272, 281 (D. Conn. 1999); Nash v. N.Y.S. Executive Dep't, Div. of Parole, 96 Civ. 8354, 1999 WL 959366 at *5 (S.D.N.Y. Oct. 20, 1999).

Nicolae v. Office of Vocational & Educ. Servs. for Individuals with Disabilities, 257 Fed. Appx. 455, 456-67 (2d Cir. 2007); Palma v. Workers Comp. Bd. of the State of N.Y., 151 Fed. Appx. 20, 22 (2d Cir. 2005), cert. denied, 549 U.S. 814, 127 S. Ct. 347 (2006); Perry v. State Ins. Fund, 83 Fed. Appx. 351, 353 (2d Cir. 2003) ("[T]he Fund is a 'state agency' entitled to soverign immunity and therefore that [plaintiff's] claims asserted under Title I of the ADA cannot proceed.") (citations omitted); Melrose v. N.Y.S. Dep't of Health Office of Prof'l Med. Conduct, 05 Civ. 8778, 2009 WL 211029 at *5 (S.D.N.Y. Jan. 26, 2009) (State agency "is entitled to Eleventh Amendment immunity for the purposes of Plaintiff's [ADA] claim against it for money damages.").  Second, the State (and the Banking Department) did not waive its Eleventh Amendment immunity.[11/]  (See Dkt. No. 8: Banking Dep't Br. at 5.)

Accordingly, Scherman's ADA Title I claim should be dismissed as barred by the Eleventh Amendment.

## III.    SCHERMAN'S TITLE II ADA CLAIM SHOULD BE DISMISSED BECAUSE ADA TITLE I DEALS WITH EMPLOYMENT DISCRIMINATION

In opposing the Banking Department's motion to dismiss, Scherman (assisted by counsel) changed her reliance to ADA Title II, rather than Title I.  (Dkt. No. 10: Scherman Br. at 2-

---

[11/]     "In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, [the Court] will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction.'"  Edelman v. Jordan, 415 U.S. 651, 673, 94 S. Ct. 1347, 1360-61 (1974) (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S. Ct. 458, 464 (1909)); see also, e.g., College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. at 675-76, 119 S. Ct. at 2226;  Atascadero State Hosp. v. Scalon, 473 U.S. 234, 239-40, 105 S. Ct. 3142, 3146 (1985).

3.)[12]   The Banking Department's reply moved pursuant to Rule 12(b)(6) to dismiss Scherman's employment discrimination claims under ADA Title II on the grounds that "Title I is the exclusive federal remedy for claims of disability discrimination in employment under the ADA." (Dkt. No.11: Banking Dep't Reply Br. at 2-3.)[13]

     The Supreme Court has yet to decide whether Congress validly abrogated state sovereign immunity by its enactment of Title II.  See Bd. of Trs. of Univ. of Ala. v. Garrett 531 U.S. 356, 360 n.1, 121 S. Ct. 955, 960 n.1 (2001) ("We are not disposed to decide the constitutional issue whether [ADA] Title II, which has somewhat different remedial provisions from [ADA] Title I, is appropriate legislation under § 5 of the Fourteenth Amendment when the parties have not favored us with briefing on the statutory question.").

     The Supreme Court also has not addressed whether a claim for employment discrimination may be brought by a plaintiff under Title II of the ADA,[14] and the Courts of Appeals

---

[12]    Scherman's opposition brief sought leave to amend, in order to formally assert the Title II claim.  (Scherman Br. at 2.)  The Court liberally construes Scherman's existing pro se complaint and addresses the Title II claim.

[13]    Title II's operative section reads:  "Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

[14]    While the Supreme Court has declined to rule on whether an employment discrimination claim can be brought under Title II of the ADA, it noted that Title I of the ADA exclusively deals with employment discrimination claims.  Bd. of Trs. of Univ. of Ala. v. Garrett 531 U.S. at 360 n.1, 121 S. Ct. at 960 n.1 ("'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'").

that have addressed the issue are divided.  Compare, e.g., Zimmerman v. Oregon Dep't of Justice, 170 F.3d 1169, 1172-84 (9th Cir. 1999) (Title II does not apply to employment discrimination), cert. denied, 531 U.S. 1189, 121 S. Ct. 1186 (2001); Parker v. Metropolitan Life Ins. Co., 121 F.3d 1006, 1014 (6th Cir. 1997) ("[T]he statutory framework of the ADA expressly limits discrimination in employment practices to Title I of the ADA."  Refuses to allow employment discrimination claim under ADA Title III.), cert. denied, 522 U.S. 1084, 118 S. Ct. 871 (1998); Decker v. Univ. of Houston, 970 F. Supp. 575, 577-80 (S.D.Tex. 1997) (Title II is inapplicable to employment discrimination claims; "[a]ny other reading simply ignores the ADA's statutory scheme."), aff'd 159 F.3d 1355 (5th Cir. 1998); with Bledsoe v. Palm Beach County Soil & Water Conservation Dist., 133 F.3d 816, 825 (11th Cir.) (Title II permits an employment discrimination claim), cert. denied, 525 U.S. 826, 119 S. Ct. 72 (1998).[15]

The Second Circuit has yet to decide whether Title II of the ADA applies to employment discrimination.  See e.g., Perry v. State Ins. Fund, 83 Fed. Appx. 351, 354 n.1 (2d Cir. 2003) ("There remain questions regarding . . . whether Title II ADA violations can be based on employment discrimination . . . .  We need not, however, reach these questions at this time."); Mullen v. Rieckhoff, No. 98-7019, 189 F.3d 461 (table), 1999 WL 568040 at *1 (2d Cir. July 18, 1999) (noting "a split of authority over whether an employment discrimination plaintiff may avoid

---

[15] The Fourth, Fifth, and Tenth Circuits have assumed without deciding that ADA Title II applies to employment discrimination claims against public entities.  See Davoll v. Webb, 194 F.3d 1116, 1130 (10th Cir. 1999); Holmes v. Texas A & M Univ., 145 F.3d 681, 684 (5th Cir. 1998); Doe v. Univ. of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 n.8 (4th Cir. 1995).

the ADA's requirement of an EEOC charge by filing under Title II of that Act," but not reaching the issue).  District court decisions in this Circuit are split on this issue, but the better reasoned decisions have held that ADA Title I is the exclusive remedy for employment discrimination claims, and thus employment claims under Title II are precluded.  See, e.g., Chiesa v. N.Y.S. Dep't of Labor, 638 F. Supp. 2d 316, 321 (N.D.N.Y. 2009); Melrose v. N.Y.S. Dep't of Health Office of Prof'l Med. Conduct, 05 Civ. 8778, 2009 WL 211029 at *9 (S.D.N.Y. Jan. 26, 2009); Fleming v. State Univ. of N.Y., 502 F. Supp. 2d 324, 333 (E.D.N.Y. 2007); Ayantola v. Cmty. Technical Colls. of the State of Conn. Bd. of Trs., No. 05 CV 957, 2007 WL 963178 at *2 (D. Conn. Mar. 30, 2007); Cormier v. City of Meriden, No. 03 CV 1819, 2004 WL 2377079 at *8 (D. Conn. Sept. 30, 2004); Sworn v. W. N.Y. Children's Psychiatric Ctr., 269 F. Supp. 2d 152, 157-58 (W.D.N.Y. 2003); Filush v. Town of Weston, 266 F. Supp. 2d 322, 326-31 (D. Conn. 2003); Syken v. State of N.Y., Executive Dep't, Div. of Hous. & Cmty. Renewal, 02 Civ. 4673, 2003 WL 1787250 at *11 (S.D.N.Y. Apr. 2, 2003).[16]

　　　Courts holding that ADA Title II permits employment discrimination claims generally have deferred to 28 C.F.R. § 35.140, a Department of Justice regulation interpreting Title II as

---

[16]　　District court decisions in this Circuit reaching a contrary conclusion include, e.g., Olsen v. State of N.Y., No. 04 CV 0419, 2005 WL 5885368 at *5 (E.D.N.Y. Mar. 9, 2005) (siding with those cases that permit employment discrimination claims under Title II); Transp. Workers Union of Am. v. N.Y.C. Transit Auth., 342 F. Supp. 2d 160, 170-75 (S.D.N.Y. 2004) (exploring the history and language of ADA Title II and concluding that it applies to employment discrimination); Smith v. State Univ. of N.Y., No. 00-CV-1454, 2003 WL 1937208 at *8 (N.D.N.Y. Apr. 23, 2003) (Title II applicable to employment discrimination despite acknowledging that the Supreme Court "certainly hinted that it was skeptical that Title II would cover such claims."); Worthington v. City of New Haven, No. 94-CV-00609, 1999 WL 958627 at *7 (D. Conn. Oct. 5, 1999) (employment discrimination is covered by Title II).

prohibiting employment discrimination by public entities.[17]   E.g., Bledsoe v. Palm Beach County Soil & Water Conservation Dist. 133 F.3d at 823 ("The DOJ regulations provide clearly that Title II encompasses employment actions against public entities. . . . [W]e cannot ignore the DOJ's reasonable construction of statutory language."); Smith v. State Univ. of N.Y., 2003 WL 1937208 at *8; Worthington v. City of New Haven, 1999 WL 958627 at *7.

When faced with an administrative agency's interpretation of a statute, the Supreme Court has provided a two-step process for reviewing the agency's construction of the statute.  See, e.g., Chevron U.S.A. Inc., v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-44, 104 S. Ct. 2778, 2781-82 (1984).  The first step is to determine whether Congressional intent is clear.  Id. at 842, 104 S. Ct. at 2781.  "If the intent of Congress is clear, that is then end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Id. at 842-43, 104 S. Ct. at 2781.  If Congressional intent is ambiguous, the second step is to determine if the agency's regulations are "arbitrary, capricious, or manifestly contrary to the statute."  Id. at 844, 104 S. Ct. at 2782.

The structure of the ADA demonstrates Congress' clear intent for Title II not to apply to employment claims.  First, ADA Title I, titled "Employment" by Congress, contains detailed employment provisions.  See 42 U.S.C. § 12112.  ADA Title II, titled "Public Services" by Congress,

---

[17]     28 C.F.R. § 35.140(a) states:

No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity. 28 C.F.R. § 35.140(a).

lacks any employment provisions.  See 42 U.S.C. § 12132.  Under Title I, a "'qualified individual'"

with a disability "means an individual who . . . can perform the essential functions of the

employment position . . . ." 42 U.S.C. § 12111(8). Title II, however, defines the same phrase as "an

individual with a disability who, with or without reasonable modifications to rules, policies, or

practices . . . meets the essential eligibility requirements for the receipt of services or the

participation in programs or activities provided by a public entity."  42 U.S.C. § 12131(2).  Thus,

while Title I defines a "qualified individual" with a disability in terms of employment, Title II defines

it on the basis of a person's ability to receive services or participate in programs or activities.  See,

e.g., Zimmerman v. Oregon Dep't of Justice, 170 F.3d at 1176.  Congress' omission of any mention

of employment in Title II is presumed to be an intentional exclusion.  While the Supreme Court has

not decided this issue, it certainly has indicated its views that Title I, and not Title II also, deals with

ADA employment discrimination by governmental entities.  See Bd. of Trs. of Univ. of Ala. v.

Garrett 531 U.S. at 360 n.1, 121 S. Ct. at 960 n.1 (noting that Title I of the ADA "expressly deals"

with claims of employment discrimination.); see also, e.g., Zimmerman v. Oregon Dep't of Justice,

170 F.3d at 1172; Melrose v. N.Y.S. Dep't of Health Office of Prof'l Med. Conduct, 2009 WL

211029 at *8 (Supreme Court "seemed to indicate that a plaintiff" may not bring an employment

discrimination claim under ADA Title II.); Fleming v. State Univ. of N.Y., 502 F. Supp. 2d at 333

("The ADA includes a title devoted exclusively to employment; it is Title I . . . . Title II, meanwhile,

says nothing about . . . employment practice[s]."); Cormier v. City of Meriden, 2004 WL 2377079

at *5 ("The headings of the ADA clearly distinguish between the titles governing disability

discrimination in employment and disability discrimination in public services."); Syken v. State of

N.Y. Executive Dep't, Div. of Hous. & Cmty. Renewal, 2003 WL 1787250 at *8; <u>Filush</u> v. <u>Town of Weston</u>, 266 F. Supp. 2d at 329-30.

        Second, if employment discrimination claims were allowed to be brought under ADA Title II, Title I would become redundant.  Under Title I, an "employer" is "a person engaged in an industry affecting commerce who has 15 or more employees." 42 U.S.C. § 12111(5).  Holding Title II to apply to employment discrimination claims would render the particularity with which Congress defined an employer to be superfluous.  <u>See</u>, <u>e.g.</u>, <u>Chiesa</u> v. <u>N.Y.S. Dep't of Labor</u>, 638 F. Supp. 2d at 321 ("Given the specific steps taken by Congress to tailor Title I for employers, Title II is too generic for use against employers and is not intended for such use."); <u>Syken</u> v. <u>State of N.Y.</u>, <u>Executive Dep't, Div. of Hous. & Cmty. Renewal</u>, 2003 WL 1787250 at *9 ("[A]llowing employment discrimination claims under Title II would make Title I redundant as applied to public employees."); <u>Filush</u> v. <u>Town of Weston</u>, 266 F. Supp. 2d at 330.

        Third, Title I incorporates the remedies and procedures of Title VII of the Civil Rights Act of 1964, <u>see</u> 42 U.S.C. § 12117(a), while Title II incorporates provisions from the Rehabilitation Act, <u>see</u> 42 U.S.C. § 12133.  <u>See</u>, <u>e.g.</u>, <u>Syken</u> v. <u>State of N.Y., Executive Dep't, Div. of Hous. & Cmty. Renewal</u>, 2003 WL 1787250 at *9 & n.11.  As Courts in this District have noted: "[u]nlike Title I, Title II does not require a plaintiff to exhaust his administrative remedies prior to filing suit. Therefore, allowing a plaintiff to bring an employment discrimination suit under Title II allows him to bypass the administrative exhaustion requirement of Title I."  <u>Syken</u> v. <u>State of N.Y., Executive Dep't, Div. of Hous. & Cmty. Renewal</u>, 2003 WL 1787250 at *9 (citations & fn. omitted); <u>accord</u>, <u>e.g.</u>, <u>Zimmerman</u> v. <u>Oregon Dep't of Justice</u>, 170 F.3d at 1177-78; <u>Melrose</u> v. <u>N.Y.S. Dep't of Health</u>

Office of Prof'l Med. Conduct, 2009 WL 211029 at *9; Cormier v. City of Meriden, 2004 WL 2377079 at *6-7; Sworn v. W. N.Y. Children's Psychiatric Ctr., 269 F. Supp. 2d at 157 & n.4; Filush v. Town of Weston, 266 F. Supp. 2d at 330.   Indeed, to read Title II to allow employment discrimination claims would violate the "'elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.'"  Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana, 472 U.S. 237, 249, 105 S. Ct. 2587, 2594 (1985).

Fourth, Congress delegated regulatory authority to promulgate regulations for ADA Title I and Title II to different agencies.  Congress gave the EEOC authority to issue regulations to carry out Title I.  See 42 U.S.C. § 12116.  Title II, on the other hand, gave the Attorney General authority to promulgate regulations.  See 42 U.S.C. § 12134(a).  If both Title I and II apply to employment discrimination, "then it is possible for state and local governments to be subjected to conflicting regulations."  Zimmerman v. Oregon Dep't of Justice, 170 F.3d at 1178; see  Syken v. State of N.Y., Executive Dep't, Div. of Hous. & Cmty. Renewal, 2003 WL 1787250 at *9.

Because the overall structure and language of the ADA unambiguously expresses Congress' intent that employment discrimination claims be brought under Title I only, this Court can end its inquiry at the first step of the Chevron analysis, and should not consider the DOJ regulations. See, e.g., Zimmerman v. Oregon Dep't of Justice, 170 F.3d at 1173; Fleming v. State Univ. of N.Y., 502 F. Supp. 2d at 333; Cormier v. City of Meriden, 2004 WL 2377079 at *8; Filush v. Town of Weston, 266 F. Supp. 2d at 328.  Title II of the ADA does not apply to employment discrimination.

Accordingly, Scherman's employment discrimination claim under Title II of the ADA fails to state a claim upon which relief can be granted and should be dismissed.

**CONCLUSION**

For the reasons stated above, the Banking Department's motion to dismiss (Dkt. No. 6) should be <u>GRANTED</u>.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  <u>See also</u> Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Batts (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Roldan</u> v. <u>Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir. 1988);

H:\OPIN\SCHERMAN

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72.

Dated:      New York, New York
             March 19, 2010

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies to:     Deborah Scherman (Regular & Certified Mail)
            Monica Anne Connell, Esq.
            Judge Deborah A. Batts